# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re _____ ) Case No. _____

) 

) NOTICE OF **_PRELIMINARY_**

) HEARING ON MOTION

)    FOR USE OF CASH COLLATERAL

)    TO OBTAIN CREDIT

Debtor(s) ) *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

  a.  The immediate and irreparable harm that will come to the estate pending a final hearing is _____.

  b.  The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.    A **_PRELIMINARY_** HEARING on the motion WILL BE HELD ON _____ AT _____ IN _____.
Testimony will be received if offered and admissible.

4.    If you wish to object to the motion, you must do one or both of the following: (1) attend the preliminary hearing; and/or (2) file with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), a written response, which states the facts upon which you will rely and, if the response is filed within three business days before the hearing, notify the judge's chambers by telephone immediately after filing the document, as required by LBR 9004-1(b). See Local Form #541.51 for details.

5.    On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:




_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (12/1/13)    **LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER**

Keith Y. Boyd, OSB #760701
keith@boydlegal.net
The Law Offices of Keith Y. Boyd
724 S. Central Ave., Suite 106
Medford, OR 97501
Telephone: (541) 973-2422
Facsimile: (541) 973-2426
       Of Attorneys for Debtor in Possession


# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Gregorio Martinez Rodriguez,<br><br>       Debtor. | Case No. 15-60956-tmr11<br><br>MOTION FOR AUTHORITY TO USE CASH COLLATERAL (Wells Fargo Bank, Former Employees, Internal Revenue Service, Sysco Portland, Inc.)<br><br>**EXPEDITED CONSIDERATION REQUESTED** |

       Gregorio Martinez Rodriguez, debtor in possession herein (DIP), hereby moves the Court

for an order authorizing the use of cash collateral and respectfully submits the following:

       1.      On March 16, 2015, this case was commenced by the filing of a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code. The DIP on and since such date has

continued in possession of his property and operation of his business, known as the Si Casa

Flores Mexican Cuisine restaurants located at 1250 Biddle Road and 960 North Phoenix Road

#103, Medford, Oregon and 205 Fern Valley Road, Phoenix, Oregon, as a debtor in possession.

Prior to January 16, 2015, the business of the three restaurants were operated by G.M.R., Inc., an

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 1 of 7**

Oregon corporation of which the debtor was the sole shareholder.  On January 16, 2015, all assets of G.M.R., Inc. were transferred to the debtor for protection in this case.

2.      Prior to the filing of the debtor's petition, Wells Fargo Bank (Wells Fargo) was granted a security interest by G.M.R., Inc. in virtually all of the assets of the restaurants as security for its loan.  Wells Fargo filed its UCC Financing Statement on November 16, 2006, and its Continuation on May 24, 2011, and the balance of the loan on the day of filing was approximately $179,500.

3.      Among the property securing the claim of Wells Fargo are accounts, inventory, equipment, chattel paper, general intangibles, and the proceeds and products of such collateral; the proceeds of which constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a).

4.      Prior to the filing of the debtor's petition, Eduardo Lopez, Francisco Flores, and Leobardo Esquivel (Former Employees) were granted a security interest by G.M.R., Inc. in the business name, lease (Biddle location only because that is the only lease in the name of the corporation), goodwill, and all assets and personal property located on the business premises including furniture, fixtures, restaurant equipment, and accounts receivable, bank accounts, cash and other securities.  The Former Employees were also granted a security interest by the debtor in all real property and personal property of the debtor including jewelry, art work, lawn furniture, tools, appliances, yard equipment, motor vehicles, recreational equipment, stocks and bonds.   A UCC Financing Statement was filed January 17, 2014 against G.M.R., Inc., the debtor's corporation.  The DIP has found no UCC Financing Statement against the debtor, individually.  No mortgages or trust deeds were recorded relating to any of the debtor's real properties.  The Former Employees are not noted on the title of any of the debtor's vehicles as

security interest holders. Therefore, the DIP will treat the purported security interest of the Former Employees in the real estate, motor vehicles, and personal property of the debtor, other than the assets associated with the operation of the restaurants, as unperfected and unenforceable.

5.     Among the property actually and enforceably securing the claim of the Former Employees are the following assets associated with the operation of the restaurants: equipment, accounts, intangibles, and leases; the proceeds and products of which constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a). Because neither the Security Agreement nor the UCC Financing Statement specifically mention inventory, the DIP will treat the inventory as only subject to the prior security interest of Wells Fargo. The balance due to the Former Employees on the day of filing was approximately $400,000.

6.     Prior to the filing of the debtor's petition, the IRS filed liens on "Si Casa Flores-Medford, a Partnership" seeking security for the outstanding amounts owed. It is unknown if the asserted liens are effective as to the debtor or G.M.R., Inc. because the name in which the liens are filed is not consistent with any business entity or organization that the debtor used in the operation of his businesses. The liens were filed March 31, 2014, May 14, 2014, and August 28, 2014 and the estimated balance as of filing was $28,000. Based on IRS Code and Regulations, it is anticipated that the IRS will take the position it has the first lien on the inventory of the restaurants, if the liens are valid.

7.     Prior to the filing of the debtor's petition, Sysco Portland, Inc. (Sysco) was granted a security interest in virtually all of the assets of the debtor as security for the balance due on its open account with G.M.R., Inc. Sysco filed its UCC Financing Statement on January

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 3 of 7**

9, 2015 and the balance of the loan on the day of filing was approximately $22,000. As this UCC was filed within 90 days of the filing, the DIP will likely challenge the security interest as preferential.

8.      Based on the valid and perfected security interests of Wells Fargo and the Former Employees, and the possible liens of the IRS and Sysco in accounts and inventory, the DIP seeks an order of this court authorizing the use of the proceeds of accounts and inventory in the ordinary course of the operation of the restaurants. The value of accounts and inventory on the day of filing was approximately $56,400.

9.      The DIP has no source of income other than from the operation of his business and he needs to use cash collateral to pay current operating expenses, including payroll.

10.     If the DIP is not permitted to use cash collateral of Wells Fargo and the Former Employees (Secured Lenders) he will not be able to continue to operate his businesses. Exhibit 1 contains the proposed cash collateral budget for operating expenses through June 2015. On an interim basis for the next 60 days, the DIP seeks approval to use all $56,400 of cash collateral for operations. The DIP anticipates providing a 12 month budget to the court and interested parties prior to the final hearing on this motion.

11.     The DIP proposes to use cash collateral in which the Secured Lenders may hold a security interest, on the following terms:

a.      To use the cash and rents in the operation of the business and in conformance with the budget attached hereto as Exhibit 1.

b.      To provide adequate protection to the Secured Lenders during the term of this agreement:

MOTION FOR AUTHORITY TO USE CASH COLLATERAL - **Page 4 of 7**

i.      The Secured Lenders each shall be granted liens on and security interests in all post-petition cash, accounts receivable, and inventory as security for any claims they may have arising from the diminution in the value of the interest in prepetition collateral resulting from the use by the DIP thereof from and after the petition date in the same positions their liens currently attach to the DIP's assets.

ii.     All funds received since the petition date or which will be received during the pendency of this case will be deposited in the DIP's bank account or accounts and that all expenses of the DIP during the pendency of this case will be paid from such accounts.  The DIP will not prepay expenses except in the ordinary course of business.

iii.    The DIP will not use cash collateral during the pendency of this agreement for any purpose which is not authorized by the Bankruptcy Code or by an order of the court.

iv.     The Secured Lenders shall have access to and the right to inspect the DIP's assets and properties during business hours.

v.      The DIP will timely file with the court the monthly financial statements which the DIP is obligated to file under LBR 2015.

vi.     Upon reasonable notice, the DIP will permit the Secured Lenders to inspect, review and copy any financial records of the DIP.  These records will be made available at the DIP's place of business.

vii.    If the DIP defaults in any of the conditions of adequate protection, the Secured Lenders may provide the DIP with written notice of such default.  Such notice will also be filed with the Court and United States Trustee.  If the default has not been cured within

ten (10) days after notice of default is mailed, the DIP's right to use the cash collateral will terminate.

12.     Nothing contained in a cash collateral order shall constitute:

a.     An admission by the Secured Lenders that the protection provided to them shall not at some time become inadequate to fully and properly protect its interests and at any time it may apply to the court for additional adequate protection; or

b.     An agreement to the treatment of the Secured Lenders under any plan of reorganization.

13.     The use of cash collateral order will continue until the earlier of a default and failure to cure by the DIP, confirmation of a plan, conversion to a case under Chapter 7, or dismissal.

14.     Notwithstanding any of the provisions hereof, nothing contained in the cash collateral order shall constitute a determination as to the amount, validity, or priority of any prepetition obligation, lien, or security interest of any creditor; and all rights of the DIP and other parties in interest to argue that any prepetition lien or security interest in any property of the DIP is unperfected, unenforceable, or voidable, are preserved.

15.     This motion does not contain any of the generally disapproved provisions set forth in LBF 541.7, a copy of which is attached hereto as Exhibit 2.

16.     The DIP requests that the Court consider this motion on an expedited basis so that he may continue his businesses.  Attached hereto as Exhibit 3 is a copy of the proposed interim order approving use of cash collateral on an interim basis until a final hearing can be held.

WHEREFORE, the DIP requests that this Court hold a preliminary hearing pursuant to 11 U.S.C. §363(c)(3) and FRBP 4001(b) to consider authorizing the DIP, pending a final hearing, to use cash collateral as described herein, setting a final hearing to approve the DIP's motion for authority to use cash collateral as outlined herein.

DATED this 25th day of March, 2015.

THE LAW OFFICES OF KEITH Y. BOYD

By:    /s/ Keith Y. Boyd
       Keith Y. Boyd, OSB #760701
       Of Attorneys for Debtor in Possession

**3:39 PM**
**11/19/14**
**Cash Basis**

**SI CASA FLORES**
**Profit & Loss**
**January 2012 through September 2014**

# GMR INC  MONTHLY CASH GENERATION

|  | Mar-15 | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| **Total Income** | $198,564.71 | $198,564.71 | $198,564.71 | $198,564.71 |
| | | | | |
| **Cost of Goods Sold** | | | | |
| FOOD & BEVERAGE PURCHASES | $64,955.32 | $64,955.32 | $64,955.32 | $64,955.32 |
| PAYROLL | $51,331.36 | $51,331.36 | $51,331.36 | $51,331.36 |
| RESTAURANT SUPPLIES | $1,320.95 | $1,320.95 | $1,320.95 | $1,320.95 |
| SALSA | $6,908.73 | $6,908.73 | $6,908.73 | $6,908.73 |
| **Total COGS** | $124,516.36 | $124,516.36 | $124,516.36 | $124,516.36 |
| | | | | |
| **Gross Profit** | $74,048.35 | $74,048.35 | $74,048.35 | $74,048.35 |
| | | | | |
| **Expense** | | | | |
| ACCOUNTING | $876.33 | $876.33 | $876.33 | $876.33 |
| ADVERTISING | $2,083.11 | $2,083.11 | $2,083.11 | $2,083.11 |
| AUTO EXPENSES | $1,164.19 | $1,164.19 | $1,164.19 | $1,164.19 |
| BANK CHARGES | $1,321.68 | $1,321.68 | $1,321.68 | $1,321.68 |
| CONTRIBUTIONS | $95.58 | $95.58 | $95.58 | $95.58 |
| DUES & SUBSCRIPTIONS | $144.23 | $144.23 | $144.23 | $144.23 |
| EQUIPMENT LEASE | $2,844.95 | $2,844.95 | $2,844.95 | $2,844.95 |
| FINANCE CHARGES & INTEREST | $0.00 | $0.00 | $0.00 | $0.00 |
| FINES & PENALTIES | $0.00 | $0.00 | $0.00 | $0.00 |
| INSURANCE | | | | |
| LIABILITY INSURANCE | $800.47 | $800.47 | $800.47 | $800.47 |
| PAYROLL - W/C INSURANCE | $355.30 | $355.30 | $355.30 | $355.30 |
| INSURANCE - Other | $1,107.85 | $1,107.85 | $1,107.85 | $1,107.85 |

Exhibit 1
Page 1 of 3

**SI CASA FLORES**
**Profit & Loss**
January 2012 through September 2014

# GMR INC  MONTHLY CASH GENERATION

|  | Mar-15 | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|---|
| **Total INSURANCE** | $2,263.61 | $2,263.61 | $2,263.61 | $2,263.61 |
|  |  |  |  |  |
| **INTEREST EXPENSE** | $0.00 | $0.00 | $0.00 | $0.00 |
| **LAUNDRY & JANITORIAL** | $486.63 | $486.63 | $486.63 | $486.63 |
| **LEGAL** | $6,065.86 | $6,065.86 | $6,065.86 | $6,065.86 |
| **MAINTENANCE** | $1,302.97 | $1,302.97 | $1,302.97 | $1,302.97 |
| **MEALS** | $9.53 | $9.53 | $9.53 | $9.53 |
| **MERCHANT FEES** | $3,833.79 | $3,833.79 | $3,833.79 | $3,833.79 |
| **MISCELLANEOUS** | $218.75 | $218.75 | $218.75 | $218.75 |
| **MUSIC** | $287.47 | $287.47 | $287.47 | $287.47 |
| **OFFICE SUPPLIES** | $60.42 | $60.42 | $60.42 | $60.42 |
| **OPERATING SUPPLIES** | $321.34 | $321.34 | $321.34 | $321.34 |
| **PRINTING** | $81.35 | $81.35 | $81.35 | $81.35 |
| **RENT** | $24,151.90 | $24,151.90 | $24,151.90 | $24,151.90 |
| **SECURITY** | $268.83 | $268.83 | $268.83 | $268.83 |
| **TAXES & LICENSES** |  |  |  |  |
| MISC TAX & LICENSE | $655.20 | $655.20 | $655.20 | $655.20 |
| PAYROLL TAXES | $5,615.74 | $5,615.74 | $5,615.74 | $5,615.74 |
| TAXES | $12.16 | $12.16 | $12.16 | $12.16 |
| **Total TAXES & LICENSES** | $6,283.10 | $6,283.10 | $6,283.10 | $6,283.10 |
|  |  |  |  |  |
| **TELEPHONE** | $525.81 | $525.81 | $525.81 | $525.81 |
| **UTILITIES** | $5,943.21 | $5,943.21 | $5,943.21 | $5,943.21 |
| **Total Expense** | $60,634.65 | $60,634.65 | $60,634.65 | $60,634.65 |
|  |  |  |  |  |
| **Net Ordinary Income** | $13,413.70 | $13,413.70 | $13,413.70 | $13,413.70 |
| **Less Owner Draw** | $6,500.00 | $6,500.00 | $6,500.00 | $6,500.00 |

Exhibit 1
Page 2 of 3

**SI CASA FLORES**
**Profit & Loss**
**January 2012 through September 2014**

# GMR INC  MONTHLY CASH GENERATION

|  | Mar-15 | Apr-15 | May-15 | Jun-15 |
|---|---|---|---|---|
| **Net Cash Generated** | $6,913.70 | $6,913.70 | $6,913.70 | $6,913.70 |

Exhibit 1
Page 3 of 3

**UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF OREGON**

**GUIDELINES REGARDING MOTIONS TO USE CASH COLLATERAL
OR TO OBTAIN CREDIT**

*EACH MOTION FOR COURT APPROVAL TO USE CASH COLLATERAL OR TO OBTAIN CREDIT MUST CLEARLY EITHER:  (1) STATE THAT IT DOES **NOT** CONTAIN ANY OF THE FOLLOWING PROVISIONS OR (2) IDENTIFY WHICH OF THE FOLLOWING PROVISIONS ARE CONTAINED IN THE MOTION, AND THE JUSTIFICATION FOR THE PROVISION(S).*

The court will not normally approve the following types of provisions in motions either to use cash collateral (Bankruptcy Code §363(c)(2)) or to obtain credit (Bankruptcy Code §364(c)):

1.  Cross-collateralizing prepetition debt with postpetition assets.

2.  Findings of fact on matters extraneous to the approval process.  (For example, in connection with an application to borrow on a secured basis, a finding that the debtor cannot obtain unsecured credit would be acceptable, whereas a "finding" that the lender acted in good faith in declaring the prepetition loan in default would not be acceptable.)

3.  Provisions or findings of fact that bind the debtor, the estate and/or all parties in interest with respect to the validity, perfection, relative priority or amount of the secured party's lien or debt.  This would include, for example, an order approving a provision that the secured party's lien is a "first priority" lien on the collateral.

4.  Any language that characterizes any postpetition payments as payments of interest, fees or costs on a prepetition loan.

5.  Waiver of Bankruptcy Code §506(c) right to seek to charge collateral of secured party for the trustee's expenses in preserving or disposing of assets for the benefit of the secured party.

6.  Granting a security interest in bankruptcy avoiding power causes of action or avoiding power recoveries.

7.  Waiver or release by debtor or the estate of any or all claims the debtor/estate may have against the lender/secured party, including waiver of avoiding power causes of action against the lender/secured party or against insiders of the lender/secured party.

8.  Waiver by debtor or the estate of the right to seek to "prime" the secured position of the lender/secured party under Bankruptcy Code §364(d).

9.  "Priming" any other party's lien, without that party's consent or without providing adequate protection.

10.  Automatic relief from the stay of Bankruptcy Code §362(a) upon the occurrence of a default, upon conversion to Chapter 7 or upon appointment of a trustee, without further application to, and order of the court.

11.  Waiver, effective on default, or expiration of a prior court order, of the debtor's right to move for a court order pursuant to Bankruptcy Code §363(c)(2)(B), authorizing the use of cash collateral in the absence of the secured party's consent.

541.7 (12/1/10)

Exhibit 2
Page 1 of 1

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 15-60956-tmr11 |
| Gregorio Martinez Rodriguez, | INTERIM ORDER ALLOWING USE OF CASH COLLATERAL |
| Debtor. | |

THIS MATTER came before the court at a preliminary hearing held on March 30, 2015

on the debtor in possession's (DIP) motion for authority to use cash collateral (Docket No. ____).

The court having reviewed the motion of the DIP, the files and records herein, and having

considered the representations of counsel, and it further appearing that,

1.      On March 24, 2015, this case was commenced by the filing of a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.  The DIP on and since such date has

continued in possession of his property and operation of his business, known as the Si Casa

Flores Mexican Cuisine restaurants located at 1250 Biddle Road and 960 North Phoenix Road

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 1 of 7**

Exhibit 3
Page 1 of 7

#103, Medford, Oregon and 205 Fern Valley Road, Phoenix, Oregon, as a debtor in possession.

Prior to January 16, 2015, the business of the three restaurants were operated by G.M.R., Inc., an

Oregon corporation of which the debtor was the sole shareholder.  On January 16, 2015, all

assets of G.M.R., Inc. were transferred to the debtor for protection in this case.

2.      Prior to the filing of the debtor's petition, Wells Fargo Bank (Wells Fargo) was

granted a security interest by G.M.R., Inc. in virtually all of the assets of the restaurants as

security for its loan.  Wells Fargo filed its UCC Financing Statement on November 16, 2006, and

its Continuation on May 24, 2011, and the balance of the loan on the day of filing was

approximately $179,500.

3.      Among the property securing the claim of Wells Fargo are accounts, inventory,

equipment, chattel paper, general intangibles, and the proceeds and products of such collateral;

the proceeds of which constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a).

Prior to the filing of the debtor's petition, Eduardo Lopez, Francisco Flores, and Leobardo

Esquivel (Former Employees) were granted a security interest by G.M.R., Inc. in the business

name, lease (Biddle location only because that is the only lease in the name of the corporation),

goodwill, and all assets and personal property located on the business premises including

furniture, fixtures, restaurant equipment, and accounts receivable, bank accounts, cash and other

securities.  The Former Employees were also granted a security interest by the debtor in all real

property and personal property of the debtor including jewelry, art work, lawn furniture, tools,

appliances, yard equipment, motor vehicles, recreational equipment, stocks and bonds.   A UCC

Financing Statement was filed January 17, 2014 against G.M.R., Inc., the debtor's corporation.

The DIP has found no UCC Financing Statement against the debtor, individually.  No mortgages

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 2 of 7**

Exhibit 3
Page 2 of 7

or trust deeds were recorded relating to any of the debtor's real properties. The Former

Employees are not noted on the title of any of the debtor's vehicles as security interest holders.

Therefore, the DIP will treat the purported security interest of the Former Employees in the real

estate, motor vehicles, and personal property of the debtor, other than the assets associated with

the operation of the restaurants, as unperfected and unenforceable.

4.      Among the property actually and enforceably securing the claim of the Former

Employees are the following assets associated with the operation of the restaurants: equipment,

accounts, intangibles, and leases; the proceeds and products of which constitute "cash collateral"

within the meaning of 11 U.S.C. § 363(a). Because neither the Security Agreement nor the UCC

Financing Statement specifically mention inventory, the DIP will treat the inventory as only

subject to the prior security interest of Wells Fargo. The balance due to the Former Employees

on the day of filing was approximately $400,000.

5.      Prior to the filing of the debtor's petition, the IRS filed liens on "Si Casa Flores-

Medford, a Partnership" seeking security for the outstanding amounts owed. It is unknown if the

asserted liens are effective as to the debtor or G.M.R., Inc. because the name in which the liens

are filed is not consistent with any business entity or organization that the debtor used in the

operation of his businesses. The liens were filed March 31, 2014, May 14, 2014, and August 28,

2014 and the estimated balance as of filing was $28,000. Based on IRS Code and Regulations, it

is anticipated that the IRS will take the position it has the first lien on the inventory of the

restaurants, if the liens are valid.

6.      Prior to the filing of the debtor's petition, Sysco Portland, Inc. (Sysco) was

granted a security interest in virtually all of the assets of the debtor as security for the balance

due on its open account with G.M.R., Inc. Sysco filed its UCC Financing Statement on January

9, 2015 and the balance of the loan on the day of filing was approximately $22,000.  As this UCC was filed within 90 days of the filing, the DIP will likely challenge the security interest as preferential.

7.      Based on the valid and perfected security interests of Wells Fargo and the Former Employees, and the possible liens of the IRS and Sysco in accounts and inventory, the DIP seeks an order of this court authorizing the use of the proceeds of accounts and inventory in the ordinary course of the operation of the restaurants.  The value of accounts and inventory on the day of filing was approximately $56,400.

8.      The DIP has no source of income other than from the operation of his business and he needs to use cash collateral to pay current operating expenses, including payroll.

9.      If the DIP is not permitted to use cash collateral of Wells Fargo and the Former Employees (Secured Lenders) he will not be able to continue to operate his businesses.  Exhibit 1 contains the proposed cash collateral budget for operating expenses through June 2015.  On an interim basis for the next 60 days, the DIP seeks approval to use all $56,400 of cash collateral for operations.  A copy of the budget is attached as Exhibit 1.

10.     Wells Fargo and the Former Employees are willing to consent to the use of cash collateral in which they may hold a secured interest on the terms set forth in this Order.

NOW, THEREFORE, IT IS HEREBY ORDERED:

A.      The DIP is authorized to use the cash and rents from the operation of the business in conformance with the Budget attached as Exhibit 1.

B.      To provide adequate protection to Wells Fargo and the Former Employees during the term of this agreement:

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 4 of 7**

Exhibit 3
Page 4 of 7

1.      Wells Fargo and the Former Employees shall be granted a lien on and security interest in all post-petition cash, rents, accounts receivable, and inventory as security for any claims they may have arising from the diminution in the value of their interest in their prepetition collateral resulting from the use by the DIP thereof from and after the petition date in the same position their liens currently attach to the DIP's assets.

2.      All funds received since the petition date or which will be received during the pendency of this case will be deposited in the DIP's bank account or accounts and that all expenses of the DIP during the pendency of this case will be paid from such accounts.  The DIP will not prepay expenses except in the ordinary course of business.

3.      The DIP will not use cash collateral during the pendency of the requested order for any purpose which is not authorized by the Bankruptcy Code or by an order of the court.

4.      Wells Fargo and the Former Employees shall have access to and the right to inspect the DIP's assets and properties during business hours.

5.      The DIP will timely file with the court the monthly financial statements which the DIP is obligated to file under LBR 2015.

6.      Upon reasonable notice, the DIP will permit Wells Fargo and/or the Former Employees to inspect, review and copy any financial records of the DIP.  These records will be made available at the DIP's place of business.

7.      If the DIP defaults in any of the conditions of adequate protection, Wells Fargo and/or the Former Employees may provide the DIP with written notice of such default.  Such notice will also be filed with the Court and United States Trustee.  If the default has not

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 5 of 7**

Exhibit 3
Page 5 of 7

been cured within ten (10) days after notice of default is mailed, the DIP's right to use the cash collateral will terminate.

      C.      Nothing contained in a cash collateral order shall constitute:

          1.      An admission by Wells Fargo and/or the Former Employees that the protection provided to them shall not at some time become inadequate to fully and properly protect its interests and at any time it may apply to the court for additional adequate protection; or

          2.      An agreement to the treatment of Wells Fargo and/or the Former Employees under any plan of reorganization.

      D.      The use of cash collateral order will continue until the earlier of a default and failure to cure by the DIP, confirmation of a plan of reorganization, conversion to a case under Chapter 7, or dismissal.

      E.      Notwithstanding any of the provisions hereof, nothing contained in the cash collateral order shall constitute a determination as to the amount, validity, or priority of any prepetition obligation, lien, or security interest of any creditor; and all rights of the DIP and other parties in interest to argue that any prepetition lien or security interest in any property of the DIP is unperfected, unenforceable, or voidable, are preserved.

      F.      This is an interim order which shall be effective only until such time as the court, upon adequate notice and hearing, considers the DIP's motion at a future hearing.

      G.      Objections, if any, to the relief sought in the DIP's motion, shall be in writing, shall be filed with the Clerk of the Bankruptcy Court and the Office of the United States Trustee, and shall be served upon the attorneys for the DIP and on Wells Fargo and the Former Employees  on or before the date set forth in LBF 541 when served.

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 6 of 7**

Exhibit 3
Page 6 of 7

H.    A further interim hearing on the DIP's motion shall be held by the court and

notice thereof  shall be served separately.

###

Proponent has provided notice as required by LBR 9021-1 and received no objections during the applicable circulation period which has now expired.

Presented By:

By:    /s/_____
        Keith Y. Boyd, OSB#760701
        keith@boydlegal.net
        The Law Offices of Keith Y. Boyd
        724 S. Central Ave., Suite 106
        Medford, OR 97501
        Tele:  541-973-2422
        Fax:  541-973-2426
            Of Attorneys for Debtor in Possession

cc:

<u>via Manual Service:</u>

INTERIM ORDER ALLOWING USE OF CASH COLLATERAL - **Page 7 of 7**

Exhibit 3
Page 7 of 7

*In re Gregorio Martinez Rodriguez*
U.S. Bankruptcy Court Case No. 15-60956-tmr11

SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON
MOTION FOR USE OF CASH COLLATERAL

<u>via Manual Service (first class mail and as described below):</u>

Gregorio M. Rodriguez
4449 Innsbruck Ridge
Medford OR 97504

<u>Largest Unsecured Creditors:</u>

Bank of America (via Facsimile)
Brian Wells, Acct Rep
POB 1880
Voorhees NJ 8043

Bank of the Cascades (via Facsimile)
Andrew J. Gerlicher, Reg. Agent
POB 970
Bend OR 97709

Chase (via Facsimile)
Accounts Receivable
POB 15123
Wilmington DE 19850

Chase (via Facsimile)
Accounts Receivable
POB 78101
Phoenix AZ 85062

GreenTree (via Facsimile)
Accounts Receivable
POB 6172
Rapid City SD 57709

Hornecker Cowling et al (via Facsimile)
Eric B Mitton
717 Murphy Rd
Medford OR 97504

Lopez, Eduardo (via Email)
Flores, Francisco J
Esquivel, Leobardo
3555 S Pacific Hwy #218
Medford OR 97501
-Email to Robert C Roberston

Robertson, Robert C (via Email)
1175 E Main St #1F
Medford OR 97504

Sysco Portland, Inc. (via Facsimile)
c/o Mark T Lanctot, President
26250 SW Parkway Center Dr
Wilsonville OR 97070

TD Auto Finance (via Facsimile)
Accounts Receivable
POB 9223
Farmington Hills MI 48333

Wells Fargo (via Facsimile)
Accounts Receivable
POB 10335
Des Moines IA 50306

Wells Fargo (via Facsimile)
Accounts Receivable
POB 30086
Los Angeles CA 90030

Wells Fargo Business Line (via Facsimile)
Accounts Receivable
POB 54349
Los Angeles CA 90054

<u>Lienholders/Potential Lienholders:</u>

Wells Fargo Bank, N.A. (via Facsimile)
John G Stumpf, CEO
20 Montgomery Street
San Francisco, CA 94104

Lopez, Eduardo (via Email)
Flores, Francisco J
Esquivel, Leobardo
3555 S Pacific Hwy #218
Medford OR 97501
-Email to Robert C Roberston

SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON MOTION FOR USE OF
CASH COLLATERAL - **Page 1 of 2**

Robertson, Robert C (via Email)
1175 E Main St #1F
Medford OR 97504

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346
(via Facsimile and Email to Susan Lathrop)

The Attorney General of the United States
Department of Justice
10th & Constitution NW
Washington DC 20530

U.S. Attorney for the District of Oregon
1000 SW 3rd Ave #600
Portland OR 97204

Sysco Portland, Inc. (via Facsimile)
c/o Mark T Lanctot, President
26250 SW Parkway Center Dr
Wilsonville OR 97070


<u>via Electronic Service:</u>

KEITH Y BOYD    ecf@boydlegal.net, arnold@boydlegal.net
US Trustee, Eugene    USTPRegion18.EG.ECF@usdoj.gov


SERVICE LIST FOR NOTICE OF PRELIMINARY HEARING ON MOTION FOR USE OF
CASH COLLATERAL - **Page 2 of 2**